******************************************************

  The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

  All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

  The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ENRICO VACCARO, ADMINISTRATOR (ESTATE OF
MARIE J. VACCARO), ET AL. *v.*
CHRISTOPHER P. LOSCALZO
ET AL.
(AC 42951)

Bright, C. J., and Cradle and Suarez, Js.

*Syllabus*

The plaintiffs, V and E, sought to recover damages for, inter alia, the allegedly
wrongful death of the decedent, M, as a result of the defendants' negli-
gence. The plaintiffs commenced the action in May, 2016. Despite various
pleadings and motions filed by the defendants, the plaintiffs did not
serve any discovery, take any depositions, close the pleadings, disclose
any experts, or respond to outstanding discovery requests. Additionally,
E died in May, 2016, and his estate was never substituted as the proper
party in the case. Eventually, in February, 2018, the plaintiffs' counsel
relayed to the trial court personal reasons why deadlines and discovery
compliance were not met and represented that he needed to withdraw.
Following more continuances, V was not able to obtain new counsel,
and objected to the plaintiffs' counsel withdrawing from the case. In
March, 2019, the court denied the motion to withdraw filed by the
plaintiffs' counsel and, in April, 2019, granted the defendants' motion
to dismiss for failure to prosecute with due diligence. On appeal to
this court, the plaintiffs claimed that the court abused its discretion in
rendering a judgment of dismissal. *Held* that the trial court did not
abuse its discretion in dismissing the plaintiffs' complaint for failure to
prosecute with due diligence; under the factors articulated in *Ridgaway*
v. *Mount Vernon Fire Ins. Co.* (328 Conn. 60), the court's sanction of
dismissal was proportional to the plaintiffs' misconduct in that the court
carefully set forth a pattern of misconduct by the plaintiffs over the
course of three years, the plaintiffs were clearly on notice of the possibil-
ity of a sanction as the defendants began requesting a judgment of
dismissal as a sanction in November, 2017, and the court repeatedly
notified the plaintiffs that a dismissal would be forthcoming if they
continued their pattern of delays, the court demonstrated the use of
alternatives to dismissal by issuing new orders and warnings of dismissal
but these alternatives failed and further alternatives were not required,
and, although the court squarely put the blame for the repeated violations
of its orders on the plaintiffs' counsel, the record demonstrated that
the plaintiffs were aware of the misconduct.

Argued September 16—officially released December 8, 2020

*Procedural History*

Action to recover damages for, inter alia, the allegedly
wrongful death of the named plaintiff's decedent as a
result of the defendants' negligence, and for other relief,
brought to the Superior Court in the judicial district of
New Haven, where the court, *Wilson, J.*, granted the
defendants' motion to dismiss and rendered a judgment
of dismissal, from which the plaintiffs appealed to this
court. *Affirmed.*

*Paul T. Edwards*, with whom was *Bruce Jacobs*, for
the appellants (plaintiffs).

*Patrick M. Noonan*, with whom, on the brief, was
*Kristianna L. Sciarra*, for the appellees (defendants).

*Opinion*

BRIGHT, C. J. The plaintiffs, Enrico Vaccaro (Attorney Vaccaro), acting as the administrator of the estate of Marie J. Vaccaro (decedent), and Enrico F. Vaccaro, the now deceased husband of Marie J. Vaccaro,[1] appeal from the judgment of the trial court dismissing for failure to prosecute with due diligence[2] their substitute complaint against the defendants, Christopher P. Loscalzo, Cardiology Associates of New Haven, P.C., Yale Medical Group, Yale University School of Medicine, and Yale New Haven Hospital, Inc. The plaintiffs claim that the court abused its discretion in dismissing the substitute complaint. We affirm the judgment of the trial court.

The trial court, in a very thorough memorandum of decision, set forth the following procedural history of this case. "On May 26, 2016, the plaintiff[s] . . . commenced this wrongful death [and loss of consortium] action by service of writ, summons and complaint against the defendants . . . . The return date is June 21, 2016, and the original complaint was returned to court on June 3, 2016. The original complaint contains six counts . . . .

"The plaintiffs divide the six count complaint into two parallel sets of postmortem and antemortem claims. Counts one through three of the plaintiffs' complaint assert claims for wrongful death, loss of consortium, and a claim for reimbursement for any liability incurred per [General Statutes] § 46b-37 for antemortem or postmortem expenses, relating to the decedent's treatment, stroke, and death. Counts four through six of the plaintiffs' complaint assert antemortem claims for medical malpractice, loss of consortium, and a claim for reimbursement for any liability incurred per § 46b-37 for antemortem expenses, relating to the decedent's treatment and stroke. . . .

"On January 17, 2017, counsel filed a joint scheduling order [that] was approved by the court on January 19, 2017. The scheduling order included the following filing deadlines:

"File certificate of closed pleadings: March 1, 2017

"Exchange written discovery requests: April 1, 2017

"Exchange discovery responses: June 1, 2017

"Complete fact witness depositions: August 1, 2017

"Disclose the plaintiff[s'] experts: October 15, 2017

"Depose the plaintiff[s'] experts: December 15, 2017

"Disclose defense experts: March 2, 2018

"Depose defense experts: May 1, 2018

"Trial management conference: May 21, 2018

"Trial: June 5, 2018.

"Despite these clear deadlines, the plaintiff[s] did not serve any discovery, take any depositions, close the pleadings, disclose any experts, or respond to outstanding discovery requests. [The defendants'] counsel attempted to work with the plaintiff[s'] counsel since the beginning of the case. According to [the defendants'] counsel, the parties discussed certain revisions to the complaint, and after said discussions, [the defendants'] counsel was under the impression that an amended complaint would be forthcoming. However, after waiting several months for an amended complaint, [the defendants'] counsel was forced to file a partial motion to strike.

"On February 17, 2017, the defendants filed a motion to strike counts three through six of the plaintiffs' complaint on the ground that they fail to state claims upon which relief can be granted. The defendants concurrently filed a memorandum of law in support of their motion to strike. The plaintiffs [did not file] an objection. . . .

"On August 24, 2017, the court granted the motion to strike counts three, four, five, and six of the plaintiff[s'] complaint. On October 6, 2017, the defendants answered the remaining counts of the complaint. On November 29, 2017, the defendants filed a motion to dismiss . . . for the plaintiff[s'] failure to diligently prosecute the case. This motion appeared on the court's January 16, 2018 arguable short calendar. Attorney Joseph Gasser appeared for the defendants, however the plaintiff[s'] counsel, [Paul T. Edwards], failed to appear. At oral argument, the court stated that it would give the plaintiff[s'] counsel until February 5, 2018, to respond to the motion to dismiss and would reschedule the matter for argument. . . . As of January 16, 2019, the date of oral argument on the motion, [the plaintiffs] still [have] not complied with the scheduling order or the defendants' request for discovery.

"[O]n February 7, 2018, the court denied the defendant[s'] motion to dismiss and issued the following order: [February 28, 2018 10 a.m.] This case is scheduled for a status conference with the Honorable Robin L. Wilson on the date and time shown above. All counsel of record must attend. The court further gives notice that it will hear argument on the record regarding the defendant[s'] pending motion to dismiss. Counsel for the plaintiff[s] must appear at the scheduled status conference and hearing and show cause why this action should not be dismissed and costs awarded for failure to diligently prosecute. Failure to appear may result in entry of dismissal or default. Please report to Judge Wilson's courtroom at 4C (New Haven Superior Court, 235 Church St., New Haven). . . .

"On November 29, 2017, the same date the defendants filed their motion to dismiss, they filed a motion for

order of compliance. In that motion, the defendants move[d] for an order requiring [the plaintiffs] to comply with the defendants' interrogatories and requests for production dated July 21, 2017, or, in the alternative, for an order of nonsuit. Responses were due by September 21, 2017; [the plaintiffs] [have] neither responded nor sought an extension of time to respond. Counsel for the defendants attempted to resolve [the plaintiffs'] noncompliance without consuming judicial resources. . . . Having received no response from [the plaintiffs'] counsel, the defendants respectfully request[ed] that this court either order [the plaintiffs] to respond or enter an order of nonsuit against [the plaintiffs] for failure to comply with [their] discovery obligations. . . . On February 7, 2018, the court ordered the plaintiff[s] to comply with discovery by March 2, 2018.

"In accordance with the court's order issued on February 7, 2018, a status conference was held on February 28, 2018. At the status conference, [the plaintiffs'] counsel acknowledged that compliance with the deadlines set forth in the scheduling order had not been met, nor had discovery been produced in response to the defendants' discovery requests which were due on September 21, 2017. [The plaintiffs'] counsel relayed to the court and to [the defendants'] counsel personal reasons why deadlines were not met and discovery compliance had not been met. After discussions with both counsel, the court issued the following order in accordance with the discussions at the status conference: Pursuant to a status conference held on February 28, 2018, the parties have agreed to file a joint modified scheduling order on or before March 14, 2018. Failure to comply with the court's order by filing said modified scheduling order on the date herein ordered could result in the entry of a dismissal or default against the noncomplying party. . . . On March 16, 2018, [the plaintiffs'] counsel filed a modified scheduling order signed by both counsel, and the court approved same on March 20, 2018. The modified scheduling order . . . included the following deadline dates:

"File certificate of closed pleadings: March 31, 2018

"Exchange written discovery requests by: June 1, 2018

"Exchange responses to discovery requests by: September 1, 2018

"Any dispositive motions to be filed by: October 15, 2018

"Responses to dispositive motions [to be filed] by: November 15, 2018

"Dispositive motions shall be marked ready no later than: December 3, 2018

"Disclose [the plaintiffs'] experts by: August 15, 2018

"Disclose the defendants' experts by: January 15,

"Complete depositions:

"[The plaintiffs'] fact witnesses by: April 30, 2018

"[The defendants'] fact witnesses by: June 30, 2018

"[The plaintiffs'] experts by: November 1, 2018

"[The defendants'] experts by: April 1, 2019.

"Counsel further agreed that the plaintiff[s] would respond to the defendants' outstanding written discovery on/or before March 28, 2018. Based upon the filing of the modified scheduling order by the parties, and the court's approval of same, a trial date was continued to March 19, 2019, from its original date of June 5, 2018, and a trial management date was set for March 5, 2019.

"On March 15, 2018, seven months after the court's August 24, 2017 ruling on the defendants' motion to strike, the plaintiff[s] filed a substituted complaint. The . . . substituted complaint, which was filed a year ago, still contains a noncognizable statutory claim under . . . § 46b-37, which was stricken by this court. In addition, the plaintiff Enrico F. Vaccaro died in May, 2016, nearly three years ago and his estate has not been substituted as the proper party in this case.

"Due to the plaintiff[s'] counsel's continued failure to prosecute this case, by failing to comply with scheduling orders, and by failing to respond to the defendants' request for discovery, the defendants, again, on October 15, 2018, moved to dismiss the case for lack of diligence. The defendant[s] also filed a motion for summary judgment on grounds that the plaintiff[s] failed to disclose an expert in support of [their] medical negligence claim and derivative loss of consortium claim and therefore could not meet [their] burden of proof, thus, entitling the defendants to judgment as a matter of law. Both motions were scheduled for oral argument on December 10, 2018. During oral argument on the motions, counsel for the plaintiff[s] represented that he needed to get out of the case due to health issues and personal issues and requested thirty days to allow the plaintiff[s] to obtain new counsel. Counsel for the plaintiff[s] acknowledged on the record that the case had not moved forward, and that the lack of prosecution of the case was no fault of the plaintiff[s'] but rather [was] counsel's fault. Counsel further stated that if the court was going to issue a sanction for failure to prosecute with diligence, it should sanction counsel. Attorney Edwards asked the court for thirty days so that he could assist the plaintiff in obtaining new counsel. The court granted [Attorney Edwards'] request and gave him until January 9, 2019, to file a withdrawal of appearance in accordance with [Practice Book] § 3-10. The court further ordered that an appearance by new counsel be filed by no later than January 9, 2019. The court rescheduled oral argument on the motion to dismiss

. . . and the motion for summary judgment . . . for January 14, 2019. The court heard oral argument on January 14, 2019. The [plaintiffs'] counsel failed to comply with the court's order of January 9, 2019. At oral argument on January 14, 2019, [Attorney Edwards] stated that the reason he did not file the withdrawal was because he was not comfortable filing the motion to withdraw and leav[ing] [Attorney Vaccaro] hanging. Counsel stated that he had been making attempts to assist [A]ttorney Vaccaro in obtaining new counsel, and that he did not want to abandon him without assisting him in obtaining new counsel. . . .

"On January 14, 2019, after the court heard argument, it issued the following order: Based upon argument before the court on January 14, 2019, the court hereby issues the following order. By no later than February 13, 2019, counsel for the plaintiff[s] shall file a withdrawal of appearance in accordance with Practice Book § 3-10. It is further ordered that by no later than February 13, 2019, the plaintiff[s] shall file appearance[s] as self-represented [parties][3] or new counsel shall file an appearance by said date. All expert disclosures shall be filed by no later than February 13, 2019. Oral argument on the motion to dismiss . . . and motion for summary judgment . . . is rescheduled for Monday, February 18, 2019, at 9:30 a.m. . . . Any supporting or opposing memoranda must be on file no later than the previous Thursday. . . . [A]ttorney Vaccaro is hereby ordered to appear at oral argument. No continuances will be granted absent compelling reasons and for good cause shown. In light of the court's ruling above, jury selection in this case is continued to July 12, 2019. A [trial management conference] is scheduled for June 28, 2019, at [11 a.m.] The clerk is directed to schedule oral argument and the new trial and [trial management conference] dates in accordance with the court's order. . . . At the request of the plaintiff[s'] counsel, and with the consent of the defendant[s'] counsel, oral argument was continued from February 18, 2019, to March 11, 2019.

"On March 11, 2019, the plaintiff[s'] counsel and the defendants' counsel appeared. Although the court ordered the plaintiff [A]ttorney Vaccaro to appear, due to a medical condition, the court allowed him to appear by phone. As of March 11, 2019, the plaintiff[s'] counsel failed to comply with the court's January 14, 2019 order. A new appearance of counsel was not filed on or before February 13, 2019, and had not been filed as of the date of oral argument. Expert disclosures were filed the day after the court-ordered deadline without any explanation from counsel of any compelling reason or good cause for missing the court-ordered deadline.

"Again, after the court having given the plaintiff[s'] counsel ample opportunity to get this case on track and obtain new counsel . . . he failed to do so. Moreover,

[A]ttorney Vaccaro vehemently objected to counsel's motion to withdraw appearance and disputed the representations made to the court by the plaintiff[s'] counsel regarding counsel's assistance in obtaining new counsel . . . . [Attorney] Vaccaro further represented that he looked at the Judicial Branch website and noticed that not much was going on with the case. He contacted Attorney Edwards, [who] represented to him, at that time, that he was going to get the case on track. [Attorney] Vaccaro represented that he hired Attorney Edwards in 2016, and that he just learned, in February, 2019, of [A]ttorney Edwards' need to withdraw from the case, and the basis of [A]ttorney Edwards' motion to withdraw. [Attorney] Vaccaro further represented that to allow [A]ttorney Edwards to withdraw under the circumstances would significantly prejudice his interests. He further argued that [A]ttorney Edwards had not established good cause, under rule 1.16 of the [R]ules of [Professional] [C]onduct to withdraw from the case. After hearing argument of all counsel, the court ruled from the bench on [Attorney Edwards'] motion to withdraw and denied the motion. The court advised the parties that it would take the motion to dismiss under consideration and issue a written decision on the motion." (Citations omitted; footnote added; internal quotation marks omitted.)

On April 8, 2019, the court, pursuant to Practice Book § 14-3 (a), granted the defendants' motion to dismiss for failure to prosecute with due diligence. In its decision, the court reasoned as follows: "The plaintiff[s] commenced the present action in May, 2016, nearly three years ago. In the nearly three years since the commencement of this case, the case has barely been advanced. . . . [I]n January, 2017, the parties jointly submitted a scheduling order, which the court approved. Pursuant to this scheduling order, trial was scheduled for June 5, 2018. Despite the clear deadlines set forth in the scheduling order, the plaintiff[s] failed to serve any discovery, take any depositions, close the pleadings, timely disclose any experts, or respond to outstanding discovery requests.

"In addition, [the] defendants filed a motion to strike, to which the plaintiff[s] failed to object, or, appear at oral argument. The court granted the motion to strike, and, although the plaintiff[s] filed a substituted complaint, the complaint still contains a noncognizable statutory claim under . . . § 46b-37, which was stricken by the court on August 24, 2017. In addition, the plaintiff Enrico F. Vaccaro, who has a loss of consortium claim, died in May, 2016, nearly three years ago, and his estate has not been substituted as the proper party.

"Due to the plaintiff[s'] inaction on this case, the defendants filed a motion to dismiss on November 29, 2017. This court denied the motion on February 7, 2018, and scheduled the matter for a status conference on

February 28, 2018. The parties appeared for the status conference at which time [the] plaintiff[s'] counsel requested additional time to comply with discovery, and represented to the court that he would get the case back on track. Based upon counsel's representations at the status conference, the court ordered counsel to jointly file a modified scheduling order by no later than March 14, 2018. [The] [plaintiffs'] counsel filed the modified scheduling order on March 16, 2018, and the court approved same on March 20, 2018. Pursuant to the modified scheduling order, the trial in this case was continued from its original date of June 5, 2018, to March 19, 2019.

"Between March, 2018 and October, 2018, counsel for the plaintiff[s] did absolutely nothing on the case, despite his representations to the court at the status conference held in February, 2018, and despite the clear deadlines set forth in the modified scheduling order. On October 15, 2018, the defendants again filed a motion to dismiss for lack of diligence. The court scheduled a show cause [hearing] . . . for Monday, December 10, 2018, at 9:30 a.m. . . . [ordering] [t]he plaintiff[s] . . . to produce the requested discovery by said date or appear and show cause why a dismissal should not be entered for failing to prosecute this case. . . . Counsel appeared on December 10, 2018. At the hearing, [the] plaintiff[s'] counsel represented to the court that he was having personal issues and that he needed to get out of the case and that he wanted thirty days to file a motion to withdraw and to assist [the plaintiff] [A]ttorney Vaccaro in getting new counsel. Attorney Edwards acknowledged that the case had not been prosecuted diligently and that the status of the case was no fault of counsel's client but [was] due to his own actions. Pursuant to this hearing, the court issued an order directing Attorney Edwards to file a motion to withdraw by January 9, 2019, and that new counsel file an appearance by January 9, 2019. The court rescheduled argument on the motion to dismiss and motion for summary judgment for January 14, 2019. [Attorney Edwards] appeared on January 14, 2019, and once again . . . failed to comply with the court's order. Pursuant to the January 14, 2019 hearing, the court ordered counsel for the plaintiff[s] to file a motion to withdraw by no later than February 13, 2019. The court further ordered [the plaintiff] [Attorney Vaccaro] to file an appearance as a self-represented party or [to have] new counsel file an appearance by no later than February 13, 2019. [See footnote 3 of this opinion.] The court rescheduled oral argument on the motions to dismiss and for summary judgment for February 18, 2019. In light of the court's January 14, 2019 order, the court continued the trial in this matter to July 12, 2019. The court further ordered [the plaintiff] [A]ttorney Vaccaro to appear at the February 18, 2019 hearing. . . . [A]t the request of [Attorney Edwards], and with the consent of [the] defendants'

counsel, the February 18, 2019 hearing was continued to March 11, 2019. . . . As of the date of the March 11, 2019 hearing, there had been zero discovery. The plaintiff[s] had not responded to basic discovery requests, which were served back in July, 2017. This court had twice ordered the plaintiff[s] to respond to discovery without avail. No depositions have occurred despite the defendant[s'] multiple notices for [the] plaintiff[s'] depositions. The pleadings have not been closed.

"[The] [p]laintiff[s'] [counsel] has failed to correct defects in his complaint in accordance with the court's ruling on the defendant[s'] motion to strike, and an estate has not been substituted as the proper party for the plaintiff decedent Enrico F. Vaccaro, who died in May, 2016. This court on numerous occasions has provided the plaintiff[s'] counsel with every opportunity to get this case on track, whether it be by way of the granting of a continuance so that counsel could conduct discovery and disclose experts, or whether it was for the purpose of withdrawing from the case and assisting [A]ttorney Vaccaro in obtaining new counsel. Counsel simply failed to comply with the court's orders. . . .

"Accordingly, for the foregoing reasons, the court concludes that the plaintiff[s] [have] failed to prosecute this case with diligence, and the defendants have been severely prejudiced as a result of same. The defendants' motion to dismiss is therefore granted."

After the court rendered its judgment, the plaintiffs' filed a motion for reargument, which the court denied on April 30, 2019. On May 17, 2019, the plaintiffs filed the present appeal. The plaintiffs also filed a motion to open with the trial court, which the court denied on June 10, 2019. The plaintiffs did not amend their appeal to include the court's denial of its motion to open.[4]

On appeal, the plaintiffs claim that the court abused its discretion in dismissing the substitute complaint for failure to prosecute with due diligence under Practice Book § 14-3. See footnote 2 of this opinion. They argue that the sanction of dismissal was disproportionate "under the totality of the circumstances, particularly where lesser sanctions were available and appropriate, and the plaintiffs, themselves, were not, in any way, responsible for the status of the case and the failure to comply with discovery." In response, the defendants argue that "[t]he record reveals a flagrant and persistent pattern of violating not one, but half a dozen, court orders over the course of one year. . . . In three years, no discovery had been completed . . . . The trial court was patient and clear with each order, granting many extensions and continually warning that the case was subject to dismissal if [the] plaintiffs did not comply. . . . This persistent pattern of complete neglect was more than a sufficient basis for the trial court to exercise its discretion and dismiss this case for failure to prosecute with reasonable diligence." (Citation omit-

ted; internal quotation marks omitted.) We agree with the defendants.

"Practice Book § 14-3 (a) permits a trial court to dismiss an action with costs if a party fails to prosecute the action with reasonable diligence. The ultimate determination regarding a motion to dismiss for lack of diligence is within the sound discretion of the court. . . . Under [§ 14-3], the trial court is confronted with endless gradations of diligence, and in its sound discretion, the court must determine whether the party's diligence falls within the reasonable section of the diligence spectrum. . . .

"We review the trial court's decision for abuse of discretion. . . . In determining whether a trial court abused its discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . .

"A trial court properly exercises its discretion to dismiss for failure to prosecute [with reasonable diligence] if the case has been on the docket for an unduly protracted period or the court is satisfied from the record or otherwise that there is no real intent to prosecute . . . ." (Footnote omitted; internal quotation marks omitted.) *Fleischer* v. *Fleischer*, 192 Conn. App. 540, 546, 217 A.3d 1028 (2019).

"The court's discretion, however, is not unfettered; it is a legal discretion subject to review. . . . [D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) *Harris* v. *Neale*, 197 Conn. App. 147, 157, 231 A.3d 357 (2020). "[E]ven though a trial court has wide discretion in determining whether to dismiss an action for failure to prosecute it with due diligence, there are limits to this discretion. Importantly, sanctions imposed by the court must be *proportional* to the violation or misconduct. . . .

"Our Supreme Court has identified the following factors as relevant to determining the proportionality of a sanction: the nature and frequency of the misconduct, notice of the possibility of a sanction, the availability of lesser sanctions, and the client's participation in or knowledge of the misconduct. . . . Our Supreme Court also noted that these principles reflect that, in

assessing proportionality, a trial court must consider the totality of the circumstances, including, most importantly, the nature of the conduct itself. . . . [Although] . . . the[se] . . . factors were established [by our Supreme Court in *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 776 A.2d 1115 (2001)] in the context of noncompliance with discovery orders, [they apply to all sanction orders, including] . . . a failure to prosecute with due diligence pursuant to Practice Book § 14-3." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Fleischer* v. *Fleischer*, supra, 192 Conn. App. 548–49, citing *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, 328 Conn. 60, 71–73, 176 A.3d 1167 (2018) (holding that proportionality test set forth in *Millbrook Owners Assn., Inc.*, applies to all sanctions of nonsuit). We examine the *Ridgaway* factors in relation to the present case.

"With respect to the first factor, the nature and frequency of the misconduct, it is logical that particularly egregious or frequent misconduct, such as repeated refusals to comply with a court order, warrants more severe sanctions." *Fleischer* v. *Fleischer*, supra, 192 Conn. App. 549. In the present case, the court carefully set forth in its memorandum of decision a pattern of misconduct by the plaintiffs over the course of three years, which included the repeated failure to comply with discovery requests, the repeated failure to comply with court-ordered deadlines, the failure to replead properly after the defendants' motion to strike had been granted in 2017, and the failure to substitute a proper party for a deceased party.

"With respect to the next factor—notice of the possibility of a sanction—our Supreme Court noted [in *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, supra, 328 Conn. 74] that in instances in which our appellate courts have upheld the sanction of a nonsuit, a significant factor has been that the trial court *put the plaintiff on notice* that noncompliance would result in a nonsuit." (Emphasis in original.) *Fleischer* v. *Fleischer*, supra, 192 Conn. App. 550. In the present case, the defendants, in November, 2017, began requesting a judgment of dismissal as a sanction for the plaintiffs' failure to prosecute this case with due diligence. The court repeatedly notified the plaintiffs that a dismissal would be forthcoming if they continued their pattern of delays. Clearly, they were on notice.

"Next, in evaluating the third factor, i.e., the availability of lesser sanctions, [our Supreme Court has] noted that [it] has refused to uphold a sanction of nonsuit when there were available alternatives to dismissal that would have allowed a case to be heard on the merits while ensuring future compliance with court orders." (Internal quotation marks omitted.) Id., 550–51; see id., 551 (noting that trial court in that case had not stated

on record that it had considered lesser sanction before rendering judgment of dismissal). In the present case, the court repeatedly issued new orders with which, the plaintiffs, again and again, failed to comply. The case had been stalled on the court's docket for approximately three years, and the plaintiffs had failed to comply with several of the court's orders, including discovery orders. The court made a gallant effort to move things along, but the plaintiffs appeared unwilling to do so. Although the court did not state on the record that alternatives to dismissal had been considered, the court repeatedly employed alternatives by issuing new orders and warnings of dismissal to the plaintiffs. We conclude, therefore, that the court demonstrated the use of alternatives to dismissal, but that these alternatives failed. Further alternatives were not required.

Moreover, the only alternative suggested by the plaintiffs, sanctioning counsel, would not have served the interest of the court or mitigated the impact on the defendants from the plaintiffs' failure to prosecute the case with due diligence. The trial court has an interest in ensuring that its orders are respected and followed. The court also has an interest in the timely resolution of the cases on its docket. Similarly, the defendants had an interest in the prompt resolution of the plaintiffs' allegations that the defendants had engaged in medical malpractice. Sanctioning counsel for his failure to follow court orders and advance the case would not have brought the case any closer to resolution. In fact, it is undisputed that, at the time the court rendered its judgment of dismissal, the case, due to the plaintiffs' inaction, in no way was close to being ready for trial, and sanctioning counsel would not have made it so. In this regard, the present case is markedly different than *Fleischer*, on which the plaintiffs principally rely. In *Fleischer*, we concluded that the trial court abused its discretion in ordering a disciplinary dismissal, in part because the parties were prepared to proceed with a hearing on the merits on the very day that the court dismissed the case due to counsel's prior delay in prosecuting the matter. *Fleischer* v. *Fleischer*, supra, 192 Conn. App. 550. As we noted: "There was nothing further the defendant needed to do to comply with [Practice Book] § 14-3, as he was already willing and able to prosecute the motions that day." Id.[5] That certainly was not the circumstance facing the trial court in the present case when it rendered its judgment of dismissal.

"As to the last factor, i.e., the client's participation in or knowledge of the misconduct, [our Supreme Court has] stated that [w]hether the misconduct was solely attributable to counsel and not to the party also has been a factor in assessing whether a less severe sanction than a nonsuit or dismissal should have been ordered." (Internal quotation marks omitted.) Id., 551. In the present case, on December 10, 2018, the court heard argument on the defendants' motions to dismiss and for

summary judgment. During argument, Attorney Edwards told the court that the defendants had been "exceedingly gracious throughout this matter" and that he, regretfully, needed to withdraw from the case due to health and personal issues. He requested thirty days to allow the plaintiffs to obtain new counsel. Attorney Edwards acknowledged on the record that the failure to prosecute the case was his fault and not the fault of the plaintiffs. He also stated that he needed thirty days to assist the plaintiffs in obtaining new counsel. The court admonished Attorney Edwards because there had been no movement in this case. The court, however, gave Attorney Edwards until January 9, 2019, and it rescheduled oral argument on the plaintiffs' motions to January 14, 2019.

At the January 14, 2019 hearing, Attorney Edwards stated that he had been making attempts to assist Attorney Vaccaro in obtaining new counsel. He stated that he had spoken to two different attorneys. The court, again, admonished Attorney Edwards for failing to follow the court's orders. It then issued an order requiring Attorney Edwards to file a motion to withdraw his appearance on or before February 13, 2019. It further ordered Attorney Vaccaro to file an appearance by that date or to have new counsel do so. The court again rescheduled the hearing on the defendants' motions to dismiss and for summary judgment for February 18, 2019. The court also ordered Attorney Vaccaro to appear for that hearing. That hearing, however, at the plaintiffs' request, again was rescheduled, this time to March 11, 2019.

At the March 11, 2019 hearing, Attorney Edwards informed the court that Attorney Vaccaro was unable to appear at the courthouse, and he suggested that the court call him by telephone. The court, obviously, was troubled by another direct violation of its orders, but it did allow Attorney Edwards to contact Attorney Vaccaro via his cell phone. As of the date of the hearing, March 11, 2019, Attorney Vaccaro had neither hired new counsel nor filed an appearance, despite having been ordered by the court to do so on or before February 13, 2019. No apparent effort had been made by the plaintiffs to comply with the court's January 14, 2019 order. During the hearing, Attorney Vaccaro objected to Attorney Edwards' withdrawal. Although he admitted knowing that Attorney Edwards needed to withdraw from the case for "about a month or so," he contended that he had been unable to find replacement counsel. Although Attorney Vaccaro stated that, in 2018, he was unaware of the delays in this case, he admitted that he "found out about [it] this year . . . ." He also told the court that he had checked the Judicial Branch website and that anyone "who looks at the judicial website sees that little or nothing has been done in this case." That online judicial docket contains all of the orders of the court, as well as its repeated warnings that the case

would be dismissed if the plaintiffs' failed to comply with the court's orders. Although the court in this case squarely put the blame for the repeated violations of its orders on Attorney Edwards, we conclude that the record demonstrates that the plaintiffs were aware of the misconduct.

Our Supreme Court has observed that "[i]n the disciplinary dismissal context . . . [a] trial court, for example, might find an attorney's misconduct to be egregious if the attorney represented that his nonappearance was caused by difficulties with his car without disclosing that he had ready access to alternative transportation. A trial court might make a similar finding if, in one case, the attorney repeatedly, and without credible excuse, delayed scheduled court proceedings. Nonappearances that interfere with proper judicial management of cases, and cause serious inconvenience to the court and to opposing parties, are categorically different from a mere failure to respond to a notice of dormancy pursuant to Practice Book § 251 [now § 14-3]; see *Lacasse* v. *Burns*, [214 Conn. 464, 474, 572 A.2d 357 (1990)]; or a single failure to appear, in a timely fashion, after a luncheon recess. See *Gionfrido* v. *Wharf Realty, Inc.*, [193 Conn. 28, 34 n.6, 474 A.2d 787 (1984)]. *Ruddock* v. *Burrowes*, [243 Conn. 569, 576 n.12, 706 A.2d 967 (1998)]." (Internal quotation marks omitted.) *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 50–51 n.17, 12 A.3d 885 (2011). In light of the record in this case, including the court's repeated efforts to accommodate the plaintiffs, and, on the basis of the foregoing analysis of the *Ridgaway* factors, we conclude that the court's sanction of dismissal was proportional to the plaintiffs' misconduct. Accordingly, the court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Apparently, the plaintiff Enrico F. Vaccaro died in May, 2016, but his estate has never been substituted as the proper party in this case. Appellate counsel for the plaintiffs has listed Enrico F. Vaccaro as a party to this appeal. Because the propriety of this failure to substitute is not relevant to the issues on appeal, we consider the appeal as filed.

[2] Practice Book § 14-3 (a) provides: "If a party shall fail to prosecute an action with reasonable diligence, the judicial authority may, after hearing, on motion by any party to the action pursuant to Section 11-1, or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests."

[3] We note that the court misstated that Attorney Vaccaro could file an appearance as a "self-represented party." Rather, he could have filed an appearance as the attorney acting on behalf of himself *as the administrator of the estate.*

[4] We note that "[d]isciplinary dismissals pursuant to Practice Book § 14-3 . . . may be set aside and the action reinstated to the docket upon the granting of a motion to open filed in accordance with Practice Book § 17-43 and [General Statutes] § 52-212. *Bank of New York Mellon* v. *Horsey*, 182 Conn. App. 417, 429, 190 A.3d 105, cert. denied, 330 Conn. 928, 194 A.3d 1195 (2018); cf. *Pump Services Corp.* v. *Roberts*, 19 Conn. App. 213, 216, 561 A.2d 464 (1989) (concluding that proper way to open judgment of dismissal rendered pursuant to predecessor to Practice Book § 14-3 is to file motion

to open pursuant to predecessor to Practice Book § 17-4, which parallels General Statutes § 52-212a).” (Internal quotation marks omitted.) *Harris* v. *Neale*, 197 Conn. App. 147, 156, 231 A.3d 357 (2020). In *Harris*, we recognized that “there is a conflict in our case law as to whether a motion to open a judgment of dismissal rendered pursuant to Practice Book § 14-3 is governed by § 52-212 and Practice Book § 17-43 or § 52-212a and Practice Book § 17-4.” Id., 156 n.9. Because this conflict does not affect the outcome of this appeal, we need not address it at this time.

[5] We further noted in *Fleischer* that, unlike in the present case, the court provided little or no prior notice of the possibility that it would render a disciplinary dismissal. *Fleischer* v. *Fleischer*, supra, 192 Conn. App. 550. Furthermore, unlike in the present case, the trial court in *Fleischer* had alternatives to dismissal available to it that would have addressed the prejudice claimed by the plaintiff. See id., 552–53.

———————————————